Filed 9/19/14  In re Ethan G. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re ETHAN G. et al., Persons Coming Under the Juvenile Court Law. | D065567 |
| IMPERIAL COUNTY DEPARTMENT OF SOCIAL SERVICES, | |
| Plaintiff and Respondent, | (Super. Ct. No. JJP2768) |
| v. | |
| ADRIANA R., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Imperial County, Christopher Yeager, Judge.  Affirmed.

Monica Vogelmann, under appointment by the Court of Appeal, for Defendant and Appellant.

Michael L. Rood, County Counsel, Geoffrey P. Holbrook, Senior County Counsel and Rosario Gonzalez, Deputy County Counsel, for Plaintiff and Respondent.

Adriana R. appeals the juvenile court's denial of her petition under Welfare and Institutions Code[1] section 388 to modify a prior order that terminated her reunification services and set a selection and implementation hearing under section 366.26. She contends that the juvenile court abused its discretion in finding that she failed to establish changed circumstances or that modifying the prior order would be in her children's best interests. We disagree and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Adriana gave birth to twin boys, Ethan G. and Bradley G. in February 2013. She tested positive for methadone, amphetamine, and opiates. One of the infants tested positive for amphetamine, and both showed signs of withdrawal and had difficulty feeding. They were transferred to the neonatal intensive care unit.

The Imperial County Department of Social Services (Department) received a referral regarding the infants on February 6. A Department social worker interviewed Adriana and Eric G., the infants' presumed father.[2] Adriana, who was 24 years old at the time, disclosed her substance abuse history, which included using heroin since age 15. She admitted using methamphetamine before giving birth to the twins. Adriana and Eric had been homeless until December 2012, when they moved into Adriana's mother's apartment, where they planned to share a bedroom with their children. Both parents

---

[1]    All statutory references are to the Welfare and Institutions Code.

[2]    Eric is not a party to this appeal. We discuss him only as relevant to Adriana's appeal.

stated that they would enroll in substance abuse treatment and they had an appointment to begin parenting classes.

The hospital released the children to the parents on February 23. Both parents reviewed and signed a safety plan that the Department had provided to address the parents' substance abuse.

A Department social worker visited the family's apartment on February 26, but no one was home. Adriana later called the social worker to explain that they had been at a doctor appointment and would be available the following day. The Department requested that law enforcement officials perform a welfare check on the family. Special agents from the Imperial Valley Street Interdiction Team visited the apartment and found that both parents were under the influence of a controlled substance. The agents found drug paraphernalia—syringes, a heroin cooker, and foil that was used to smoke heroin—in the bedroom that the parents shared with the children. The parents were arrested and the children were taken into protective custody.

On March 1, 2013, the Department filed a petition that alleged under section 300, subdivision (b) that the children were dependents within the jurisdiction of the juvenile court based on the risk of serious physical harm as a result of the parents' failure or inability to supervise or protect the children. Adriana appeared at the March 4 detention hearing, submitted on the Department's report, and requested visitation and evaluation of relatives for placement. The court made a prima facie finding on the petition and ordered that (1) the children's detention continue, (2) the parents receive reunification services,

and (3) the parents submit to random drug testing. The children were placed with their paternal grandparents the following day.

Adriana was released from custody on March 20, 2013, on the condition that she enroll in Imperial Valley Ministries, an inpatient treatment program. Although Adriana stated that she intended to enroll, she left the program within 30 minutes of her arrival. She advised the Department that she and Eric intended to enroll in an inpatient drug treatment program in San Diego County that was not among those recommended by the Department. Adriana told the Department that she did not have any contact information for the center, but later provided an address for what turned out to be a halfway house. Adriana subsequently admitted that she left the halfway house every day to use drugs, returning in the evening. Adriana ignored the Department's attempts to contact her, and a bench warrant for her arrest ultimately issued.

At the April 10, 2013 disposition hearing, the juvenile court ordered that reunification services be provided to Adriana for six months, and set a six-month review hearing for October 2013.

Adriana was arrested on May 6 on one or more charges each of grand theft, receiving stolen property, possession of a controlled substance, probation violations, nonsufficient funds checks, and retaking goods from an officer. Eric was also arrested on charges of grand theft, conspiracy, vandalism, and possession of stolen property.

At the six-month review hearing on October 16, 2013, the Department recommended that the court terminate reunification services and place the children with the paternal grandparents. Adriana did not object to the report and offered no affirmative

4

evidence of her own. However, her counsel asked the court not to follow the Department's recommendation because, although Adriana admittedly "has done little" towards compliance with the court-ordered reunification services, "she has put some effort into it." Specifically, while incarcerated, Adriana completed the Volunteers of America's Breaking Free Program. The court commented that although this was "[p]erhaps . . . a sign of continued progress," the parents had "not availed themselves of services prior to entry into the jail setting, and so the [Department's] recommendation appears to be appropriate." The court terminated reunification services and set a selection and implementation hearing under section 366.26 for February 9, 2014.

In its section 366.26 report, the Department recommended that the court terminate Adriana's parental rights, find the children adoptable, and order a permanent plan of adoption with the paternal grandparents. The report stated that during Adriana's first visit with the boys, she was awkward in her interaction with them and required direction to interact positively with them. She appeared more at ease toward the end of that visit. Ethan cried the entire duration of Adriana's second visit. Adriana did well during the third visit, and Ethan did a little better.

On February 4, 2014, the day before the section 366.26 hearing, Adriana filed a petition under section 388 arguing that changed circumstances warranted the court's modification of its October 16, 2013 order terminating reunification services and setting the section 366.26 hearing. As changed circumstances, the petition cited Adriana's November 11, 2013 enrollment at the North County Serenity House treatment program (Serenity House), her attendance at parenting and anger management classes, and

negative drug test results. The court continued the section 366.26 hearing to March 3, 2014 and set the section 388 petition to be heard the same day.

At the combined section 366.26 and section 388 hearing, the court admitted in evidence the Department's section 388 report. The report commended Adriana for her accomplishments, but argued that her circumstances had not changed, but rather, were merely changing, because Adriana had achieved the changes only in a court-imposed, controlled environment and on an inpatient basis. The report also argued that modification was not in the children's best interests because Adriana "does not demonstrate a strong bond with the children during visitation."

Adriana testified at the hearing. She said that she expected to graduate from Serenity House in April and planned to return to the Imperial Valley to find a job and continue her drug treatment on an outpatient basis while living with her mother. In the meantime, Adriana said that Serenity House would allow the children to live with her there. Adriana testified that the children had visited her four times at Serenity House and that the visits, which were supervised by the paternal grandmother, had been "[g]ood."

A Department social worker testified that the children cried frequently during Adriana's visits. In fact, during the most recent visit at a McDonald's restaurant in February, Adriana terminated the visit and returned the children to the paternal grandmother because they "kept on crying." This led the social worker to testify that "[i]n this case 'ordinary' is that the children don't know their mother."

The juvenile court commended Adriana for her progress, but found that she had not demonstrated a significant change in circumstances or that it would be in the

6

children's best interests to grant the section 388 petition. The court terminated the parents' parental rights, found the children adoptable, selected adoption as the permanent plan of placement, and designated the paternal grandparents the prospective adoptive parents.

Adriana timely appealed.

DISCUSSION

I.

Adriana contends that the juvenile court erred by denying her section 388 petition because she established changed circumstances and that granting the petition would be in the children's best interests.

A.    *Legal Framework*

"A juvenile court order may be changed, modified or set aside under section 388 if the petitioner establishes by a preponderance of the evidence that (1) new evidence or changed circumstances exist and (2) the proposed change would promote the best interests of the child." (*In re A.A.* (2012) 203 Cal.App.4th 597, 611 (*A.A.*).)  "The parent bears the burden to show both a legitimate change of circumstances and that undoing the prior order would be in the best interest of the child." (*Id*. at pp. 611-612.)  The fact that the parent "makes relatively last-minute (albeit genuine) changes" does not automatically tip the scale in the parent's favor. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 530.)

A petition under section 388 "is addressed to the sound discretion of the juvenile court, and its decision will not be overturned on appeal in the absence of a clear abuse of discretion." (*A.A.*, *supra*, 203 Cal.App.4th at p. 612.)  Exercises of discretion must be

7

" 'grounded in reasoned judgment and guided by legal principles and policies appropriate to the particular matter at issue.' " (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977.)  The standard "asks in substance whether the ruling in question 'falls outside the bounds of reason' under the applicable law and the relevant facts." (*People v. Williams* (1998) 17 Cal.4th 148, 162.)

B.    *Analysis*

Adriana argues that she established changed circumstances because she had enrolled at Serenity House, attended parenting and anger management classes, and tested clean for drugs.  The juvenile court found that these amounted only to changing, not changed, circumstances.[3]  There was no abuse of discretion in that finding.  Adriana had a nine-year history of substance abuse and a number of previous failed efforts at treatment, and had attained only three months' sobriety in a structured, inpatient setting.  Courts have routinely concluded that similar circumstances do not constitute changed circumstances for purposes of a section 388 petition.  (See, e.g., *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423 [" 'It is the nature of addiction that one must be "clean" for a much longer period than 120 days to show real reform.' "], quoting *In re Kimberly F.*, *supra*, 56 Cal.App.4th at p. 531, fn. 9; *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1081 [parents' three-month rehabilitation efforts were insufficient in light of "extensive histories of drug use and years of failing to reunify with their children."]; *In re Mary G.* (2007) 151 Cal.App.4th 184, 205-206 [mother being clean for four months was

---

3     Adriana acknowledges in her opening brief that "she was successfully address*ing*"—not that she "*had* successfully address*ed*"—"the issues of addiction, which had caused the removal of her children."  (Italics added.)

insufficient in light of 23-year substance abuse history]; *In re Amber M.* (2002) 103 Cal.App.4th 681, 686 [mother being clean for 372 days was insufficient in light of her 17-year substance abuse history and two previous relapses]; *In re Casey D.* (1999) 70 Cal.App.4th 38, 48-49 [juvenile court did not abuse its discretion in finding no changed circumstances based on "the parents' extensive drug histories; pattern of maintaining drug treatment only when motivated by the desire to reunify the family and required by outside agencies; and Casey's young age[, which] meant that she was too young to be able to protect herself if the parents should relapse"].)  We therefore conclude that the juvenile court did not abuse its discretion in finding that Adriana did not show changed circumstances.

Even if Adriana had established changed circumstances, there was no abuse of discretion in the juvenile court's finding that granting the section 388 petition would not be in the children's best interests.  Adriana's only argument in this regard is that although the Department "assessed the grandparents to be in good emotional and psychological health," it "did not state the couple was in good *physical* health."  This argument fails for several reasons.  First, it is contradicted by the record on appeal.  The Department's section 366.26 report specifically states that the paternal grandparents "[b]oth are in good *physical* emotional and psychological health."  (Italics added.)  Adriana does not explain—nor did she ever raise with the juvenile court—how the paternal grandmother's cancer being in remission requires a different conclusion.  Second, Adriana's own testimony at the section 388 hearing demonstrates that her children were bonded with the

paternal grandparents to the point that it would not be in the children's best interests to grant the petition:

> "Q.   You understand that Ethan and Bradley have been with your mother[-] and father-in-law for, really, their entire life [*sic*].
>
> "A.   Yes.
>
> "Q.   And that Ethan and Bradley look to your mother- and father-in-law for food and shelter.
>
> "A.   Yes.
>
> "Q.   And they look to them for their affection.
>
> "A.   Yes.
>
> "Q.   And to Ethan and Bradley, they consider your mother- and father-in-law their parents.
>
> "A.   Yes."

We conclude that the juvenile court did not abuse its discretion in finding that granting Adriana's section 388 petition would not be in the children's best interests.

DISPOSITION

The order is affirmed.

AARON, J.

WE CONCUR:


O'ROURKE, Acting P. J.


IRION, J.

10